FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

2019 APR 23  PM 3: 10

JEFFREY P. COLWELL
CLERK
BY_____DEP. CLK

| | |
|---|---|
| **Plaintiff,** | ) |
| | ) |
| FRANCIS SCHAEFFER COX | ) |
| **v.** | ) |
| | ) |
| **Defendants:** | ) |
| | ) |
| TERRY DODD; MARIA RENSEL; | ) |
| BILL RENSEL; and RICHARD NEFF | ) |

Case Number: 1:18-cv-02328-NYW

## DEFENDANT TERRY DODD'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) and RULE 12(b)(6)

*Pro Se* Defendant Terry Dodd, (hereinafter "Defendant Dodd"), moves this Court to dismiss the Plaintiff's action against him pursuant to Fed.R.Civ.P.12(b)(1) based on lack of subject matter jurisdiction, and Fed.R.Civ.P.12(b)(6) for failure to state a claim under Civil Conspiracy and Fraud/Intentional Misrepresentation upon which relief can be granted. In support of this Motion, Defendant Dodd state as follows:

## NATURE AND STATEMENT OF FACTS

Plaintiff, Francis Shaeffer Cox (hereinafter "Plaintiff Cox"), was sentenced to 26 years in prison in 2012 for, *inter alia*, conspiracy and solicitation to murder federal officials and possession of illegal weapons and explosives. His solicitation conviction was successfully appealed and was reversed by the 9th Circuit in 2017 and his resentencing is currently set for May 2019. Additionally, Plaintiff Cox' petition to the U.S. Supreme Court to review his entire criminal case is pending. He is currently incarcerated and serving his term at a federal prison in Marion, Illinois.

The Defendants are former supporters of Plaintiff Cox regarding his criminal convictions initially created a Wyoming corporation, Alaskans for Liberty, Inc., (hereinafter "AFL") for the purpose of working together as an advisory council to assist Plaintiff Cox in his appeal to have

1

his criminal convictions reversed and to assist him with monies for that legal defense, including private investigators, and to publish and bring to light what the Defendants believe was an unjust and wrongful conviction of Plaintiff Cox in which he is currently incarcerated for in Illinois.

Plaintiff Cox filed this *Pro Se* action against these Defendants essentially for allegedly conspiring to raising and stealing monies donated for Plaintiff's legal fees.   The causes of action he attempts to assert against Defendant Dodd (generally without specificity) include 1) Civil Conspiracy; and 2) Fraud/Intentional Misrepresentation.  He also tacks on additional concluding statements as that the Alaskans for Liberty Inc., is a defunct Wyoming corporation, when in fact this entity was as a Wyoming corporation and in September 2015 as re-registered as a Colorado corporation which is now a dissolved Colorado corporation.  See, Colorado Secretary of State's business entity listing, attached hereto as Defendant's Exhibit A.   Plaintiff Cox also states that the funds donated for his legal defense were not forthcoming, were misappropriated and used for things other than what they were intended for, and that funds raised for his legal defense were withdrawn and spent by the Defendants.  He further alleges that none of the funds raised were given to Plaintiff and that it is unclear as to where the funds are currently located.

Defendant Dodd was the Registered Agent for the now dissolved Alaskans for Liberty, Inc., however Defendant Dodd only served as a board member and not as a corporate officer to this entity and at no time was ever a signor on the account that held the donated monies.  In fact, in 2014, Alaskans for Liberty, Inc., a Wyoming corporation, hired a fund- raising company, Eberle Associates, Inc., to generate and run all the fund-raising campaigns, which included publications and direct mailings for the purpose of generating donations for Plaintiff's legal fees. A third company, Direct Mail Processor, Inc., was then hired and chosen to be the designated agent for

the receipt and disbursement of all donated funds   Defendant Dodd did not have direct or indirect control of the money received.

Plaintiff Cox was never a board member of AFL and never a principal in any agreement with those contracted by AFL for the purpose of handling and distributing funds raised.   A bank account was set up with a Wells Fargo Bank in Fairbanks, Alaska in 2015, by the other two named Defendants to the case at issue, Bill Rensel,  who served as President of AFL and  Richard Neff, who served as Treasurer and the party who made all of the disbursements.  The aforementioned Wells Fargo account was closed out in December 2017.

In 2016, AFL did contract with the U.S. Observer to investigate Plaintiff's criminal case and to publish his story.

Defendant Dodd tendered his resignation as an AFL board member on November 1, 2016, which was before most of the donated funds were ever received and thereby had no involvement whatsoever in the disbursements made. See, Defendant Dodd's 11-1-16 resignation, attached hereto as Defendant's Exhibit B.

Defendant Dodd was aware that there were past due accounts for services rendered to Rollie Port, a private investigator and to Robert John, Esq., for prior legal fees and work that were incurred during the initial criminal state case that was eventually moved to a Federal court , and that those two outstanding bills for legal fees were paid in full.  Defendant Dodd also has knowledge of the 3 payments made to the U.S. Observer for approximately 1) $15,000.00; $10,000.00 retainer fee and $5,000.00 pre-paid for expenses.  Additionally, another payment of approximately $5,000.00 was made for additional expenses incurred that exceeded the initial $5,000.00 and then a third payment was made for approximately $30,000.00, for the expenses incurred in publishing the first round of Cox' story and for the bulk mailing.

Additionally, Defendant Dodd has knowledge that a $10,000.00 retainer fee was also paid to attorney James Leuenberger. Esq. to represent Cox in his post-conviction matters as well as in conjunction with the work being performed by U.S. Observer, and that smaller amounts of money were sent to Cox' mother to take his children to visit him in prison. To the best of Dodd's knowledge, after he resigned, the AFL tried to persuade Cox' brother, Grady Cox, to take control of the funds coming in from Eberle & Associates and when those attempts failed, the AFL disbursed all of the remaining funds directly to Marti Lee Cox, who is the legal spouse of Plaintiff Cox, the *Pro Se* complainant in this case. In that regard, the receipt of monies received by Plaintiff's wife, is the same as or equivalent to Plaintiff Cox' receipt of those monies. The amount of monies he received in 2016 totaled $157,750.00 and in 2017 he received an additional $53,600.00. There were no other funds either received or disbursed after December 2017. See, 2016 U.S. Form 990, Return of Organization Exempt from Income Tax for Alaskans for Liberty attached hereto as Defendant's Exhibit C; and 2017 U.S. Form 990, Return of Organization Exempt from Income Tax for Alaskans for Liberty, attached hereto as Exhibit D, evidencing AFL's corporate officers, accounting of the funds AFL raised and which clearly show in Part III, that the funds generated were for the defined purpose to, "LEGAL HELP PROVIDED TO UNJUSTLY IMPRISONED INDIVIDUAL AND **SUPPORT FOR HIS IMMEDIATE FAMILY INCLUDING WIFE AND 2 CHILDREN"** *Emphasis added.*

Plaintiff Cox' Complaint before this Court alleges that he is owed one million five hundred thousand dollars ($1,500,000.00) in compensatory damages and alleges he is owed two hundred thousand dollars ($200,000.00) in punitive damages, attorneys fees and costs. Plaintiff's Complaint fails to state the factual sufficiency to substantiate his damages or that he is entitled to

relief even if his claims were plausible and because he filed this action as a *Pro Se* litigant, he is not entitled to claim attorneys' fees.

Therefore, as explained below, this Court neither has subject matter jurisdiction for any claims against Defendant Dodd nor personal jurisdiction over him and he should be dismissed from this lawsuit with prejudice.

## LEGAL ARGUMENTS

### I.    This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See,* FED. R. CIV. P. 12b(b)(1).  A Rule 12 (b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or for lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). *See Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at *11-13 (. E.D. Wash. Feb. 16, 2012) (Quackenbush, J.).  For a factual attack, evidence outside the pleadings needed to resolve disputes as to jurisdiction may be considered.  *See Assoc. of Am. Med.Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  Plaintiffs have the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Federal courts are courts of limited jurisdiction and can only hear the causes authorized by the United States Constitution or Acts of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L.Ed.2d 391 (1994).  It is presumed that cases lie outside of this limited jurisdiction and the party asserting federal jurisdiction bears the burden of overcoming that presumption. *Id.*  Article III of the United States Constitution endows federal courts with the power to hear cases "arising under" federal law.  *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 807, 106 S. Ct.3229, 92 L.Ed.2d 650(1986); U.S. Const., Art.III, ' o1331

(West 2006). A federal district court can take up matters of subject matter jurisdiction at any time in the proceedings even if no party has brought it up. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 500, 514, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006).

### A. Plaintiff's Complaint fails to establish federal court jurisdiction because it does not state a cause of action for Civil Conspiracy.

Pursuant to Fed.R.Civ.P.12(b)(6), a defendant can move to dismiss a claim for failure to state a claim upon which relief can be granted. Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, a complaint must include either direct or inferential allegations respecting all material elements of the claim asserted. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir.1985). According to the pleading standard set forth by the Supreme Court in *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 19554 (2007), a plaintiff's complaint must not only give the defendant fair notice of what the claim is, but also present "enough facts" to nudge the claim across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. Although the court must accept well-pleaded allegations of the complaint to be true and view them, as well as reasonable inferences therefrom in the light most favorable to plaintiff, dismissal is still appropriate when the complaint fails to state enough sufficient allegations to establish recovery under whatever legal theory plaintiff has chosen. *Balabanos v. North Am. Group, Ltd.*, 708 F./supp 144, 149 n.1 (N.D. III 1988); *Thomas v. L'Egss Products, Inc.*, 13 F.Supp.2d 806, 807 (C.D. Ill.1998). Moreover, in ruling on a motion to dismiss, neither "labels and conclusions" nor " a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S., at 560. This standard is heightened even more when it involves allegations of fraud, which must be pleaded with particularity. See, *Lachkmund v. ADM Inv'r Servs., Inc.*, 191 f.3d 777, 783-84 (7th Cir. 1999) (heightened pleading requirements of Fed.R.Civ.P. 9(b) apply to allegations of fraud in a civil complaint).

In this case, Plaintiff alleges Civil Conspiracy as well as Fraud and Intentional Misrepresentation, which requires that there was a valid enforceable contract between himself and the Defendants he names, yet the parties never entered into a contract, written or verbal for services and therefore Plaintiff cannot then claim that relied upon such services.   In fact, on page 4, paragraph 20, Plaintiff himself states that "...to seek donations from the supporters of Plaintiff without written consent or a contractual agreement with the Plaintiff, or any type of legal authorization from the Plaintiff to create such a project." (Complaint, &20. P.4).

### B. Plaintiff has not and cannot establish that Defendant Dodd committed or conspired to commit Fraud or Intentional Misrepresentation.

Plaintiff makes a general allegation that the "Defendants" defrauded him of donations but fails to provide the time, place, and content of any such actions by Defendant Dodd or any of the Defendants he names.   To the contrary, in another complaint that he filed in the Illinois Federal District Court for claims he alleged rose from the same fund raising efforts and actions as in the present case, Plaintiff actually admitted that he believes that Eberele Associates received what AFL told him it would receive for its fundraising efforts.   See, Complaint filed with the Illinois Federal District Court, attached hereto as Defendants Exhibit E. (Complaint, Ex. E. &65, page5k). Additionally, Plaintiff fully understood how the funding was obtained because he was ready to sign a contract individually with Eberele Associates, after the Defendants named in the present case, ended all efforts to raise monies for Plaintiff, as well as provide anymore advisory assistance to assist Plaintiff with his criminal case appeals or aid for his family to make his story known.   As he explained to Eberle, he was upset because he did not have direct control of the money being raised. *Id.*

Plaintiff contradicts his allegations by both claiming that the efforts the Defendants to raise money and collect donations were without his consent or authority, yet then alleges that he is entitled to the very same monies that were collected, alleges damages that far exceed the donations that AFL did obtain, fails to state any facts that such donations were misused, spent for other things other than for legal expenses and aid to his family, misappropriated to anything other than the outstanding legal fees and costs that were paid on his behalf. Finally, Plaintiff fails to acknowledge the monies received by his legal wife and himself in 2016 and 2017.

WHEREFORE, Defendant Dodd prays that this Court enter an Order dismissing Plaintiff's Complaint against him with Prejudice under Rule 12(b)(1) and 12(b)(6).

Respectfully submitted this 23rd day of April 2019.

Terry Dodd, *Pro Se* Defendant
Address: 11450 Marlborough Drive
Parker, Colorado 80138
Phone:    303-909-1166
Email:    Tcdodd@q.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 23rd day of April, 2019, that I placed a true and correct copy of the foregoing, **DEFENDANT TERRY DODD'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) and RULE 12(b)(6) and PROPOSED ORDER OF DISMISSAL,** in the United States mails, postage pre-paid, and emailed same, addressed to the following:

*VIA US MAIL AND*
*EMAIL TO CORRLINKS-COX, FRANCIS SCHAEFFE INMATE#16179006*
*FEDERAL BUREAU OF PRISONS BOP INIST.*
Francis Schaeffer Cox
#16179-006
TERRE HAUTE-Federal Correctional Institute
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN  47808
*PRO SE PLAINTIFF*

Terry Dodd- *Pro Se* Defendant