# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02328-CMA-NYW

FRANCIS SCHAEFFER COX,

      Plaintiff,

v.

TERRY DODD,
MARIA RENSEL,
BILL RENSEL, and
RICHARD NEFF,

      Defendants.

## <u>AMENDED</u>[1] RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER

Magistrate Judge Nina Y. Wang

This matter come before the court on the following motions:

(1) Defendants Terry Dodd ("Mr. Dodd") and Richard Neff's ("Mr. Neff" and collectively, "Appearing Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion to Dismiss"), [#33, filed April 23, 2019];[2]

(2) Appearing Defendants' "Joined Motion to Strike Plaintiff's Premature Filings; Request for Order of Involuntary Dismissal; and Motion for Protective Order to Stay

---

[1] This Amended Recommendation and Order corrects a typographical error in the court's conclusion identifying Appearing Defendants' "Joined Motion to Strike Plaintiff's Premature Filings; Request for Order of Involuntary Dismissal; and Motion for Protective Order to Stay Discovery Until the Court's Scheduling Conference" ("Motion to Strike"), [#58], which is underlined below.

[2] On July 26, 2019, Mr. Neff filed a Motion to Join Terry Dodd's Motion to Dismiss, [#102], which this court granted on July 29, 2019, [#104].

Discovery Until the Court's Scheduling Conference" ("Motion to Strike"), [#58, filed on May 30, 2019];

(3) Plaintiff Francis Schaeffer Cox's ("Plaintiff" or "Mr. Cox") "Motion for Default Judgment as to Bill and Maria Rensel" ("Motion for Default Judgment"), [#89, filed on July 8, 2019];[3] and

(4) Plaintiff's "Motion to Assess Defendants Dodd and Neff the Costs of Formal Service" ("Motion to Assess Costs"), [#111, filed on August 26, 2019].

Appearing Defendants' Motion to Strike was filed jointly, and Plaintiff filed his Response on July 8, 2019.  *See* [#87].  Appearing Defendants filed their Reply on July 22, 2019.  *See* [#97].  Plaintiff filed his Motion for Default Judgment on July 8, 2019, *see* [#89], and his Motion to Assess Costs on August 26, 2019, *see* [#111].  No Responses or Replies to Plaintiff's Motions were filed.

The court considers the Motions pursuant to 28 U.S.C. § 636(c); the Order Referring Case dated December 20, 2018, [#16]; and the Memoranda date April 24, 2019, [#35]; June 3, 2019, [#61]; and August 27, 2019, [#112].  The court concludes that oral argument will not materially assist in the resolution of this matter.  Accordingly, upon review of the Motions and associated briefing, the applicable case law, and being otherwise fully advised, I respectfully **RECOMMEND** that (1) Appearing Defendants'

---

[3] On July 8, 2019, Plaintiff filed a Motion for Entry of Default, [#88], and a Motion for Default Judgment, [#89], which the presiding judge, the Honorable Christine M. Arguello, referred to the undersigned Magistrate Judge by Memoranda dated July 8, 2019, [#90; #91].  Judge Arguello later unreferred the Motion for Entry of Default, which the Clerk of the Court subsequently denied, [#95]. Thus, it appeared that the Motion for Default Judgment was rendered moot. However, in light of the Memorandum referring the Motion for Default Judgment that has not been unreferred, [#91], this court includes Plaintiff's Motion for Default Judgment, [#89], in its Recommendation out of an abundance of caution.

Motion to Dismiss be **GRANTED**; (2) Appearing Defendants' Motion to Strike be **DENIED AS MOOT**; and (3) Plaintiff's Motion for Default Judgment be **DENIED**.  In addition, the court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Assess Costs.

## BACKGROUND

The court draws the following facts from the Complaint, [#1], and presumes they are true for purposes of the instant Motion to Dismiss and to provide context for the additional pending motions. Plaintiff is currently incarcerated at the Federal Correctional Institution located in Terre Haute, Indiana.  *See generally* [#1].  Mr. Cox is the sole principal of "Free Schaeffer Cox," [*id.* at ¶ 6], which although undefined by the Complaint, is presumably a legal defense fund for Mr. Cox.

Maria Rensel ("Ms. Rensel"), Bill Rensel ("Mr. Rensel" and collectively with Ms. Rensel, "the Rensels"), Terry Dodd, and Richard Neff (collectively, "Defendants"), were all board members of "Alaskans for Liberty" ("AFL"), a now-defunct Wyoming corporation. [*Id.* at ¶¶ 7-10].  Mr. Dodd was the Chairman of the AFL Board, Ms. Rensel was an officer of the AFL Board and the manager of the "Free Schaeffer Cox Project" ("FSC Project"), Mr. Rensel was a member of the AFL Board of Directors, and Mr. Neff was AFL's Vice Chairman.  [*Id.*].  At an undisclosed time, the Defendants—through AFL—created the FSC Project.  [*Id.* at ¶ 11].  The Defendants represented as the mission of the FSC Project to raise funds for the legal defense of Mr. Cox and represented that the Defendants worked on behalf of Mr. Cox in accomplishing this mission.  [*Id.* at ¶ 12].

Mr. Cox contends that he neither provided written consent to, nor entered into a contractual agreement with, the Defendants to authorize the FSC Project on his behalf. [*Id.* at ¶ 6].  Nevertheless, in furtherance of the FSC Project, Defendants entered into

fixed term, 36-month contracts with various companies on Mr. Cox's behalf; induced the same companies to conduct direct mail campaigns; and received donations to the FSC Project.   [*Id.* at ¶¶ 12, 14, 22].   The Defendants then allegedly instructed the various companies that it contracted with (1) not to speak to Mr. Cox, and (2) not to divulge any information to Mr. Cox or individuals working on his behalf regarding the Defendants' efforts.  [*Id.* at ¶ 13].  The donated funds were supposed to be delivered to Mr. Cox and to be used exclusively for Mr. Cox's legal defense. [*Id.* at ¶ 16].   However, donations received by the FSC Project were never distributed to Mr. Cox.  [*Id.* at ¶ 17]. Instead, the Defendants took possession of the funds donated for Mr. Cox's legal defense and misappropriated the funds.   *See* [*id.* at ¶¶ 16, 17].   Subsequently, the Defendants have declined to respond to Mr. Cox's inquiries regarding the status and location of the donated funds.  [*Id.* at ¶¶ 18, 19].

Believing Defendants' conduct to be unlawful, Plaintiff filed his pro se[4] Complaint on September 11, 2018.   *See* [#1].   Mr. Cox asserts three causes of action:   (1) civil conspiracy against all Defendants ("Count I"); (2) breach of fiduciary duty against Ms. Rensel ("Count II"); and (3) fraud/intentional misrepresentation against all Defendants ("Count III").[5]  [*Id.*]. On December 20, 2018, this court issued an Order to Show Cause as

---

[4] Because Mr. Cox proceeds pro se, this court affords his papers and filings a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[5] Articulated as "fraud/intentional misrepresentation," [#1 at 5], this court understands Count III to be a single cause of action as both terms refer to the same substantive elements:  a false representation of a material fact; the party knew such a representation was false; the party who the representation was made to did not know of its falsity; and the representation was made with an intent that it be acted upon, and results in damages.

to why the case should not be dismissed for lack of prosecution for failure to appear at a Status Conference set by the court, and ordered Mr. Cox to serve Defendants on or before March 20, 2019, and file the associated returns of service on April 5, 2019.  [#17].  In response to the Order to Show Cause, Mr. Cox indicated that he had attempted to serve Defendants by certified mail, and that his "family has paid the US Marshals to serve each Defendant and Plaintiff is awaiting the outcome of this process."  [#20].  Based on Plaintiff's representations, this court discharged the Order to Show Cause the following day.  [#21].

Mr. Cox then requested that he be permitted to serve Defendants by publication. [#22].  Because Plaintiff sought relief that was not provided for by statute or rule, this court denied his request without prejudice.  [#25].  Then, on March 14, 2019, Mr. Dodd filed an Answer to the Complaint.  [#26].  The court then granted Mr. Cox's Motion for Extension of Time to serve the remaining three Defendants, up to and including May 20, 2019.  [#29, #31].  Mr. Dodd filed the instant Motion to Dismiss on April 23, 2019.  [#33].  Then, on May 20, 2019, Mr. Neff filed an Answer to the Complaint.  [#42].  To date, there is no indication on the record that the Rensels have been properly served.

Plaintiff sought and received an extension of time to respond to the Motion, *see* [#59], and ultimately filed a Response on June 24, 2019, [#75].  On July 26, 2019, Mr. Neff filed a "Motion to Join Terry Dodd's Motion to Dismiss" ("Motion to Join"), [#102], and the court subsequently granted Mr. Neff's Motion to Join on July 29, 2019, [#104]. Appearing Defendants did not file a Reply.

---

*Compare Wood v. Houghton Mifflin Harcourt Publ'g. Co.*, 569 F.Supp.2d 1135 (D. Colo. 2008) *with Shaw v. 17 West Mill St., LLC*, 307 P.3d 1046, 1050 n.5 (Colo. 2013). Accordingly, this court refers to Count III as one for fraud.

Also before the court is Messrs. Dodd and Neff's "Joined Motion to Strike Plaintiff's Premature Filing; Request for Order of Involuntary Dismissal; and Motion for Protective Order to Stay Discovery until the Scheduling Conference" ("Motion to Strike"). [#58, filed on May 30, 2019]. The Motion to Strike seeks to strike: (1) Plaintiff's *ex parte* "filings" and affidavit, [#37; #38; #39; #40]; (2) Plaintiff's "Notice of Exemption" [#41]; (3) non-party Elizabeth A. Sarver's "Statement on Behalf of the Plaintiff", [#44]; (4) Plaintiff's Motion for Thirty-One Day Extension of Time to Reply to Defendant's Motion to Dismiss, [#54]; (5) Plaintiff's "Ex Parte Motion for a Temporary Restraining Order", [#47]; (6) Plaintiff's "Ex Parte Motion for Declaratory Judgement [sic]", [#48]; (7) Plaintiff's "Motion to Redact FBI Documents and for Other Appropriate Relief", [#49]; and (8) Plaintiff's Complaint because the Rensel Defendants have not been served.  The court has previously ruled on or stricken some of the documents challenged by Appearing Defendants' Motion, *see* [#44; #47; #48; #49; #59], and therefore will focus on only the unresolved arguments raised in Appearing Defendants' Motion to Strike.  The Motion to Strike also requests the court to order involuntary dismissal of Plaintiff's case and moves to stay discovery until the Scheduling Conference. *See* [#58].  Plaintiff filed his Response to the Motion to Strike on July 8, 2019, *see* [#87], and Appearing Defendants filed their Reply on July 22, 2019, *see* [#97].

On July 8, 2019, Plaintiff filed a "Motion for Default Judgment as to Defendants Bill Rensel and Maria Rensel". [#89].  Plaintiff's Motion for Default Judgment seeks an entry of default judgment against the Rensels.  [*Id.*].  On August 26, 2019, Plaintiff filed a "Motion to Assess Defendants Dodd and Neff the Costs of Formal Service". *See* [#111]. No Responses or Replies to either of Plaintiff's Motions were filed.

The Motion to Dismiss, Motion to Strike, Motion for Default Judgment, and Motion to Assess Costs are now ripe for disposition and I consider each Motion and the Parties' respective arguments in turn below.

## MOTION TO DISMISS

### I.    Legal Standards

#### A.    Subject Matter Jurisdiction Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction.  *See generally Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015).  For a facial attack, the court takes the allegations in the Complaint as true, but when reviewing a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

### B.     Failure to State a Claim Under Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  When considering a 12(b)(6) motion, courts "must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007).

### C.     Pleading Special Matters Under Rule 9(b)

When a plaintiff alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Rule's purpose is "to afford [a] defendant fair notice" of a plaintiff's claims and the factual grounds supporting those claims, *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)), such that the defendant is provided the "minimum degree of detail necessary to begin a competent defense." *Fulhum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015). Rule 9(b) does not require any particularity in connection with an averment of intent, knowledge, or condition of mind—rather, it simply refers to only the requirement that a plaintiff identify the circumstances constituting fraud with sufficient specificity. *Schwartz*, 124 F.3d at 1252.

Put simply, Rule 9(b) requires that a complaint "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). When a plaintiff brings a claim against multiple defendants, Rule 9(b) obliges a plaintiff to specify the manner in which each defendant participated. *Brooks v. Bank of Boulder*, 891 F. Supp. 1469. 1477 (D. Colo. 1995); *see also Lillard v. Stockton*, 267 F.Supp.2d 1081, 1094 (D. Kan. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth.").

Rule 9(b) requires a plaintiff to identify the person or persons allegedly responsible for making the misstatement, but it does not require the plaintiff to particularize the

reasons why the plaintiff believes the alleged speaker to be responsible for the statement. *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1278 (D. Colo. 2006). A plaintiff may plead collectively when the defendants participated in joint misstatements and the entities are indistinguishable from an outsider's perspective in making the identified statements. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[T]here is absolutely no requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant.").

## II. Analysis

Appearing Defendants move to dismiss Count I for civil conspiracy and Count III for fraud. [#33]. First, they argue that the court lacks subject matter jurisdiction over Plaintiff's claims. [*Id.* at 6, 7]. Second, Appearing Defendants argue that Plaintiff's Complaint fails to state a claim for civil conspiracy. [*Id.*]. Finally, they contend that Plaintiff's Complaint fails to meet the heightened pleading requirements for claims involving fraud or misrepresentation. [*Id.*]. I consider each in turn.

Because Mr. Dodd included exhibits to the Motion to Dismiss, the court directed the Parties to include in their respective Response and Reply to the Motion to Dismiss any arguments they wished to raise regarding the conversion of the Motion to Dismiss to one for summary judgment, and to include any additional evidence as necessary. [#36]. Mr. Cox provided a limited argument related to summary judgment conversion in his Response [#75], and Appearing Defendants did not file a Reply. Upon review, the court limits its consideration of the Motion to Dismiss to the face of the Complaint, and

accordingly, does not recommend the conversion of the Motion to Dismiss to one for summary judgment.

### A.    Subject Matter Jurisdiction

Appearing Defendants argue that this court lacks subject matter jurisdiction over Mr. Cox's claims because (a) "Plaintiff's Complaint . . . does not state a cause of action for Civil Conspiracy", and (b) "Plaintiff has not and cannot establish that Defendant[s] Dodd [and Neff] committed or conspired to commit Fraud or Intentional Misrepresentation." [#33 at 6, 7].   Here, however, Mr. Cox does not assert federal question jurisdiction as the basis for the court's subject matter jurisdiction. Instead, the Complaint alleges that the amount in controversy exceeds $75,000 and that all parties are citizens of different states—and thus asserts this court's diversity jurisdiction. *See generally* [#1].

Based on this court's review, Appearing Defendants may be conflating Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants do not challenge Plaintiff's assertion of diversity jurisdiction.   [#33].   Therefore, this court concludes that the Appearing Defendants have failed to carry their burden that dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is warranted.  The court now turns to whether Plaintiff pled a cognizable claim for either civil conspiracy or fraud.

### B.    Civil Conspiracy

To state a claim for civil conspiracy under Colorado law, a plaintiff must allege: "'(1) two or  more persons . . . ; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Wagner v. CHER, LLC*, No. 18-cv-01007-

STV, 2018 WL 6046432, at *5 (D. Colo. Nov. 19, 2018) (quoting *In re Qwest Commc'ns Int'l Sec. Litig.*, 387 F.Supp.2d 1130, 1153 (D. Colo. 2005)).   "Conclusory allegations merely reciting the elements of the claim, however, are insufficient." *Id.*  "Rather, Plaintiff 'must allege *specific facts* showing agreement and concerted action among the defendants.'" *Id.* (quoting *McDaniel v. Denver Lending Group, Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *12 (D. Colo. June 30, 2009) (emphasis in original)).   In addition, because Mr. Cox's civil conspiracy claim also sounds in fraud, it must also be pled under the standard of Rule 9(b).  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005).

In support of the civil conspiracy claim, the Complaint alleges that the Defendants "formed an agreement among themselves to create a fraudulent [FSC Project] and to seek donations from supporters of the Plaintiff," and "further agreed, in violation of any agreement with the Plaintiff, to use the donated funds for impermissible purposes[.]" [#1 at ¶¶ 20, 21].   "At all times," according to the Complaint, "the Defendants acted in furtherance of a common scheme or plan to defraud the Plaintiff and his supporters." [*Id.* at ¶ 23].

However, these allegations do not satisfy Mr. Cox's burden to plead his claims with particularity, such as identifying when or where the agreement was formed.  *Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of an agreement at some unidentified point does not supply facts adequate to show illegality."). Plaintiff also fails to allege "the factual basis for h[is] allegation that an agreement between all of the Defendants existed." *McDaniel v. Denver Lending Group, Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at * 12 (D. Colo. June 30, 2009).  Nor does Mr. Cox include factual allegations regarding

what specific role Mr. Dodd or Mr. Neff played in the alleged conspiracy; generalized allegations of the "Defendants'" conduct are insufficient. *See Brooks*, 891 F. Supp. at 1477 (D. Colo. 1995). These allegations are insufficient to establish the requisite "meeting of the minds" of an agreement. Plaintiff's bare allegation that all of the Defendants "formed an agreement among themselves," without more, is insufficient. *See id.*

Accordingly, I conclude that Plaintiff has failed to state a cognizable claim for civil conspiracy against Appearing Defendants.

### C.   Fraud

As discussed above, to state a claim for fraud under Colorado law, Plaintiff must allege the following elements: (1) a false representation of a material fact; (2) the party knew such a representation was false; (3) the party who the representation was made to did not know of its falsity; and (4) the representation was made with an intent that it be acted upon, and results in damages. *Wood,* 569 F.Supp.2d at 1140.

Without specifying who made what statement, the Complaint alleges that all of the Defendants "made false representations to the Plaintiff, and to others on behalf of the Plaintiff" regarding all of the Defendants' (1) ability to "raise funds for the Plaintiff's legal defense," (2) "purpose in entering into an agreement with others on behalf of the Plaintiff," (3) "integrity[,]" and (4) "background[.]" [#1 at ¶ 27]. The Complaint also alleges that the "Defendants made these false statements with full knowledge of their false nature and with the intent to deceive the Plaintiff," and alleges that "Plaintiff took action in reliance on those statements [by] engaging the Defendants, and having funds deposited with the Defendants." [*Id.* at ¶¶ 30, 31].

But "Rule 9(b) requires that allegations of fraud be pled with particularity—'the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Insight Global*, 2018 WL 2092486, at *2 (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006)).  And nowhere in the Complaint does Plaintiff allude to the time or place of the alleged misrepresentations. *See Lynch v. Olympus America, Inc.*, No. 18-cv-00512-NYW, 2019 WL 2372841, at *16 (D. Colo. June 5, 2019) ("By specifically alluding to the time and place of the misrepresentations, Plaintiff seems to have cured the defects . . . [causing her previous Complaint to fall] short of the applicable standards of Rule 9(b).").  Therefore, I conclude that the Complaint falls short of stating a claim for fraud against Messrs. Dodd and Neff.

Accordingly, I respectfully **RECOMMEND** that Appearing Defendants' Motion to Dismiss be **GRANTED**.

## MOTION TO STRIKE

As discussed in detail above, Appearing Defendants' Motion to Strike makes three primary requests of the court. First, Appearing Defendants move to strike a variety of items on the docket. Second, they request an order of involuntary dismissal because Plaintiff has failed to prosecute. Finally, Appearing Defendants move to stay discovery until the Parties appear before the court for a scheduling conference.[6]  In light of the court's Recommendation that Plaintiff's claims for civil conspiracy and fraudulent misrepresentation be dismissed as insufficiently pled, and the fact that this court had yet

---

[6] Because the Motion to Strike includes a request for involuntary dismissal, this court proceeds by Recommendation rather than Order despite the Appearing Defendants' other, non-dispositive requests.

to set a Scheduling Conference due to these preliminary issues, the court respectfully **RECOMMENDS** that Appearing Defendants' "Joined Motion to Strike Plaintiff's Premature Filing; Request for Order of Involuntary Dismissal; and Motion for Protective Order to Stay Discovery Until the Scheduling Conference" be **DENIED as moot**.

**MOTION FOR DEFAULT JUDGMENT**

Plaintiff filed a Motion for Default Judgment against only the Rensel Defendants. *See* [#89].  For the following reasons, the court recommends that Plaintiff's Motion for Default Judgment be denied.

## I.    Legal Standard

Default may be entered against a party who has failed to plead or otherwise defend.  Fed. R. Civ. P. 55(a).  "Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment." *Watkins v. Donnelly*, 551 Fed. App'x 953, 958 (10th Cir. 2014). After default is entered, pursuant to Rule 55(b)(1), default judgment may be entered by the Clerk of Court if the claim is for "a sum certain." *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Tan Facility Maint., Inc.*, No. 18-cv-00137-RPM-STV, 2018 WL 4383039, at *2 (D. Colo. June 12, 2018). There is no right to a default judgment, and whether to enter a default judgment is within the discretion of the court. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment.")).

## II.    Analysis

Plaintiff moves the court to enter a default judgment against the Rensels because the "Clerk of Court has already entered the default of Bill and Maria Rensel as a consequence of their failure to timely plead or otherwise respond to this action." [#89]. But the Clerk has done no such thing—there is no entry of default against the Rensel Defendants. *See, e.g.*, [#106 (Plaintiff's "Renewed Request to Enter Default and Default Judgment as to Bill and Maria Rensel Only"), filed on July 29, 2019; #113 (Plaintiff's "Motion to Compel the Clerk to Enter Default and Default Judgment as to Bill and Maria Rensel Only"), filed on August 26, 2019]. Accordingly, the court finds that Plaintiff has failed to obtain the prerequisite entry of default to warrant a default judgment. Therefore, I respectfully **RECOMMEND** that Plaintiff's Motion for Default Judgment be **DENIED**.

## MOTION TO ASSESS COSTS OF SERVICE

### I. Legal Standard

"Federal Rule of Civil Procedure 4(d)(1) states that a plaintiff may request 'an individual . . . that is subject to service under Rule 4(e), (f), or (h)' to waive service of a summons." *Shell v. Am. Family Rights Ass'n*, No. 09-cv-00309-MSK-KMT, 2009 WL 3837890, at *1 (D. Colo. Nov. 13, 2009). "The request must be in writing and addressed to the individual defendant, must name the court where the complaint was filed, and must contain 'a copy of the complaint, two copies of a waiver form, and a prepaid means for returning the form.'" *Id.* (quoting Fed. R. Civ. P. 4(d)(1)(A)-(C)). "The request must also provide the date when it was sent and notice to the defendant 'of the consequences of waiving and not waiving service.'" *Id.* "In addition, the request must 'give the defendant a reasonable time of at least 30 days' to waive service by returning the waiver." *Id.* (quoting Fed. R. Civ. P. 4(d)(1)(F)).

"Federal Rule of Civil Procedure 4(d)[] allows the court to assess the costs subsequently incurred in effecting service under formal methods of serving process when a defendant refuses a request to waive such service." *Wesley v. Don Stein Buick, Inc.*, 996 F. Supp. 1299, 1311 (D. Kan. 1998). *See also Costello v. Feaman*, 2010 WL 2985660 (E.D. Mo. 2010) (plaintiff may have relief under Rule 4(d)(2) prior to final judgment). An important purpose of the rule is to impose the costs of formal process on defendants who do not show good cause for refusing waiver. However, the procedural requirements of Rule 4(d)(2) are a condition precedent to a demand for costs for refusal to waive service. *Shell*, 2009 WL 3837890, at *1.

## II.   Analysis

Plaintiff moves the court to assess Messrs. Dodd and Neff the costs of formal service of the Summons and Complaint pursuant to "Federal Rule of Civil Procedure 4(b)(2)(A)". [#111]. The court assumes that Plaintiff intended to argue his Motion under Federal Rule of Civil Procedure 4(d)(2)(A), particularly given Mr. Cox's reference to that Rule on his "Notice of Lawsuit and Request for Waiver of Service of Summons " *See e.g.* [#111-1 at 3]. Plaintiff argues that both Appearing Defendants returned to Plaintiff their Waiver of Service of Summons forms unexecuted and without good cause. [#111].

It is not clear from the record that Plaintiff fully complied with the requirements of Rule 4(d)(1) as to the Appearing Defendants. Mr. Cox represents that both Mr. Dodd and Mr. Neff "returned to Plaintiff their Waiver of Service of Summons forms unexecuted," referring to Exhibit C. [*Id.* at 1]. But Exhibit C reveals that the letter to Mr. Dodd was "Return to Sender/Not Deliverable as Addressed/Unable to Forward." [#111-1 at 14]. Despite the fact that the envelope was addressed to the same address that Mr. Dodd has

used in this action, *compare* [#111-1 at 14] *with* [#26 at 2], there is no indication that Mr.

Dodd, rather than the United States Postal Service, returned the correspondence to Mr.

Cox. As to Mr. Neff, though the attached exhibit does not reflect two copies of the "Waiver

of Service of Summons forms" or the Complaint, Mr. Cox states, under penalty of perjury,

that he sent a copy of the Complaint, two copies of the waiver form, and prepaid postage

for means of returning the form. *See* [#111 at ¶ 2; #111-1 at 3-12]; *Shell*, 2009 WL

3837890, at *2 (observing that costs under Rule 4(d) may be warranted even when a

plaintiff does not strictly comply with all the technical requirements of the Rule, so long as

there is substantial compliance). He also certified the date that the request for waiver

was sent to Mr. Neff (October 30, 2018), and included a notice to Mr. Neff of the

consequences of not waiving service. [#111-1 at 4, 6]. On November 23, 2018, Plaintiff

received Mr. Neff's unexecuted waiver form when the summons and complaint were

"return[ed] to sender" after being "refused". [*Id.* at 15]. Formal service was attempted on

Mr. Neff on December 18, 21, and 27, 2019, [*id.* at 20], and ultimately perfected on May

2, 2019, [*id.* at 21]. Because Mr. Neff did not respond to Motion to Assess Costs of

Service and the time to do so has lapsed, Mr. Cox's assertions regarding his efforts to

secure waiver of service from Mr. Neff stand unrebutted and Mr. Neff has failed to

establish good cause for failing to comply with the request for waiver of service. *Cf.*

*Quilling v. Shaw*, No. 3-00-CV-1405-M, 2001 WL 611147, at *2 (N.D. Tex. June 1, 2001)

(holding that "[n]one of these defendants have responded to the motion or controverted

the allegations made by the Receiver. As a result, the Court finds that [the defendants]

have failed to establish good cause for failing to comply with the request for waiver of

service.").

While Plaintiff argues he incurred expenses of $175.00 to formally serve Mr. Neff [#111], the "Process Receipt and Return" provided that reflects the costs of Mr. Neff's service shows a total cost of $130.00 (two times $65.00) but it is not clear that the payment to Hollister Process Service of $45.00 is associated with Mr. Neff.  [#111-1 at 20-22].  Therefore, this court will not include that fee in its award.  *See Shell*, 2009 WL 3837890 at *4 (denying in part plaintiff's request for costs pursuant to Rule 4(d) upon finding that the documentation was lacking).  Accordingly, the court respectfully **ORDERS** that Plaintiff's Motion to Assess Costs be **GRANTED in part** as to $130.00 – the costs associated with the various attempts on formal service by the United States Marshals of Mr. Neff, and **DENIED without prejudice** as to the remainder of the relief requested by Mr. Cox.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1)     Defendants Terry Dodd and Richard Neff's Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), [#33], be **GRANTED** and Count I and Count III of the Complaint be **DISMISSED without prejudice as to Defendant Terry Dodd and Defendant Richard Neff**; and

(2)     Defendants Terry Dodd and Richard Neff's "Joined Motion to Strike Plaintiff's Premature Filings; Request for Order of Involuntary Dismissal; and Motion for Protective Order to Stay Discovery Until the Court's Scheduling Conference", [#58], be **DENIED as moot**; and

(3)     Plaintiff Francis Schaeffer Cox's Motion for Default Judgment as to Bill and

Maria Rensel, [#89], be **DENIED**.[7]

In addition, it is ORDERED that:

(4)     Plaintiff Francis Schaeffer Cox's Motion to Assess the Costs of Formal

Service, [#111], be **GRANTED in part** and **DENIED in part**; and

(5)     Defendant Richard Neff shall **PAY** the costs of service ($130.00) to Plaintiff

within thirty (30) days of this Order.

DATED: October 30, 2019                          BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).